## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 09-B-70040 |
|---|---|---|---|
| **DATE** | October 31, 2011 | **ADVERSARY NO.** | 09-A-96122 |
| **CASE TITLE** | Lawrence Goldstein, Debtor<br><br>Lawrence Goldstein, Plaintiff<br><br>v.<br><br>Dealer Services Corp., Defendant<br><br>Dealer Services Corp., Counter-Claimant<br><br>v.<br><br>Lawrence Goldstein, Counter-Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, ~~Plaintiff's~~ *Dealer Services Corp.'s* Motion for Partial Summary Judgment is DENIED.

■ [ For further details see text below.]

**Memorandum Opinion**

This matter comes before the Court on the motion of Dealer Services Corp. ("DSC") for partial summary judgment solely on its counterclaim against the Debtor seeking a determination of nondischargeability of debt under 11 U.S.C. § 523(a)(4).[1]

DSC alleges that the Debtor signed a Demand Promissory Note and Security Agreement in favor of DSC to finance the inventory for his car dealership, that the agreement created an express trust in any proceeds of financed collateral under Indiana law, that the Debtor breached a fiduciary duty towards DSC by selling 26 financed vehicles 'out of trust' without remitting the proceeds to DSC, and that a debt of $73,697.50 owed to DSC is therefore nondischargeable under Section 523(a)(4) for defalcation while acting in a fiduciary capacity. Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Debtor argues that summary judgment is not appropriate here because there are genuine issues as to material facts, including the existence and amount of proceeds from the 26 vehicles. However, DSC has an even bigger problem than this. Even assuming that all facts alleged by DSC are true, it has failed to state a claim under 11 U.S.C. § 523(a)(4). Therefore, although the Debtor did not file a formal motion to dismiss or a cross motion for summary judgment, the Court will enter judgment in favor of the Debtor on the Section 523(a)(4) portion of DSC's counter-claim, finding that DSC has failed to state a claim under that section. See, e.g., Jones v. Union Pac. R.R. Co., 302 F.3d 735, 740 (7th Cir. 2002) ("When there are no issues of material fact in dispute, a district judge may grant summary judgment in favor of the non-moving party or may grant summary judgment even though no party has moved for summary judgment.").[2]

## Discussion

Section 523(a)(4) makes nondischargeable any debt for "for fraud or defalcation while acting in a fiduciary capacity." However, as the Seventh Circuit Court of Appeals has noted, "[n]ot all persons treated as fiduciaries under state law are considered to 'act in a fiduciary capacity' for purposes of federal bankruptcy law." In re Berman, 629 F.3d 761, 767 (7th Cir. Jan. 21, 2011). While bankruptcy law "depends on, and implements, entitlements defined by state law," the non-dischargeablity statutes, including the existence of a fiduciary relationship under section 523(a)(4), are "a matter of federal law." Id. Thus, "state and local governments cannot influence" non-dischargeability under federal law "by attaching the word 'trust' or any equivalent label to arrangements that lack the normal attributes of those devices." In re McGee, 353 F.3d 537, 540 (7th Cir. 2003). If states cannot do so, neither can creditors create a fiduciary duty for purposes of Section 523(a)(4) simply by throwing the word "trust" into a loan or security document. See, e.g. Klingman v.

---

[1] Neither the Debtor's two-count complaint against DSC nor DSC's other claims against the Debtor under 11 U.S.C. §523(a)(2)(A) or 523(a)(6) are impacted by this decision.

[2] Although the Seventh Circuit Court of Appeals has cautioned that "granting summary judgment *sua sponte* is a 'hazardous' procedure which 'warrants special caution'" and has stated that the party against whom summary judgment is entered must be "given notice and an opportunity to come forward with its evidence," Jones, 302 F.3d at 740 (internal citations omitted), here the issue was not that DSC was unable to prove its allegations but rather that the statute simply does not apply to the facts alleged. Moreover, the Court did give DSC fair warning and an opportunity to respond. At the August 10, 2011, status hearing, the Court warned DSC that the Indiana Trust Code seemed to expressly exclude security agreements from its scope, and that therefore Section 523(a)(4) would not seem to apply. The Court then gave DSC an opportunity to respond to this issue in writing, which it did by filing a supplemental brief and a response to the Debtor's supplemental brief.

Levinson, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); see also, 11 U.S.C. § 727(a)(10) (waiver of discharge enforceable only if executed by debtor post-petition, and only if approved by bankruptcy court); 11 U.S.C. §523(c) (a debt that is otherwise dischargeable is discharged "whether or not discharge of such debt is waived" unless procedures for reaffirmation are followed).

DSC argues that the language of the promissory note and security agreement created an "express trust" under Indiana law, and that the fiduciary duty created under state trust law constituted a 'fiduciary capacity' or relationship for purposes of Section 523(a)(4). Section 3(f) of the Demand Promissory Note and Security Agreement contained a covenant by the Debtor to "hold all amounts received from the sale of an item of Inventory financed by DSC in trust for the sole benefit of and for DSC and remit a sum to DSC sufficient to satisfy all amounts due DSC and owing by Debtor for the sold item of Inventory." Section 4(e) of the agreement contained an additional covenant by the Debtor to pay DSC the indebtedness with respect to any item of inventory within 48 hours after the disposition by sale or otherwise of such inventory.

In interpreting language similar to 11 U.S.C. §523(a)(4) in the pre-1978 Bankruptcy Act, the Supreme Court made clear that only a true trust or similar relationship will create a "fiduciary" relationship for purposes of nondischargeability. Davis v. Aetna, 293 U.S. 328 (1934). Dealing with a similar situation of an auto dealer finance arrangement, the Court stated that the "substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust." Id. 293 U.S. at 334. The Seventh Circuit Court of Appeals has similarly held that no true express trust was formed where "a 'trust' clause had been inserted into a document which otherwise sets up a simple debtor-creditor relationship in an effort to assure the debtor's performance of its obligation and not to create[] a trust." Chicago Cutter-Karcher, Inc. v. Maley (In re Lord's Inc.), 356 F.2d 456, 459 (7th Cir. 1965). The court of appeals has subsequently clarified the hallmarks of a true trust arrangement, stating that "[s]egregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them, are hallmarks of the trust. These real attributes, not the labels applied by the ordinance, bring into play a fiduciary obligation and thus § 523(a)(4)." In re McGee, 353 F.3d 537, 540-41 (7th Cir. 2003).

The fundamental problem with DSC's argument, and the reason why a debtor will almost never be a fiduciary towards a secured creditor based solely on that relationship, is that the Debtor held more than 'bare' legal title in the collateral – both the vehicles and the proceeds of those vehicles. DSC had certain rights in the collateral, including the right to collect or enforce its debt against the collateral, but until DSC exercised those remedies it was still the Debtor who owned the collateral, and owned it for his own sake. DSC tries to argue that the language it added to the security agreement caused all ownership other than legal title in the proceeds of the original collateral to transfer to DSC upon the sale or disposition of the collateral. However, it is clear from the agreement and the arrangement as a whole that this is not the case. First, it is clear that DSC had no right to any profits under the agreement. If the Debtor sold all of the collateral for more than the balance owed to DSC, the agreement and arrangement were clear that DSC was only entitled to the amount owing under the note. This is fundamentally inconsistent with the argument that the Debtor held only 'bare' title to the proceeds of sale. If

it were a true trust arrangement, DSC, as the 'sole beneficiary of the trust,' would have been entitled to the profits and the Debtor likely would have only been entitled to some sort of trustee fee. Another example of why the arrangement was not a true trust in proceeds is that it is clear that DSC only expected payment of money on its obligations and not turnover of any form of proceeds. Under the agreement, the Debtor was required to "pay DSC the indebtedness with respect to any item of inventory within 48 hours after the disposition" of collateral. Thus, if part of the proceeds of a disposition of collateral was a trade-in vehicle, it is clear that DSC wanted to be paid the value of that trade-in and did not want simply the vehicle. Certainly DSC's security interest would have continued in the trade-in, and DSC no doubt wanted to have the option of enforcing the debt against the trade-in if the Debtor did not repay the debt, but turnover of a trade-in vehicle would not have satisfied the Debtor's obligation under the agreement. Again, this is inconsistent with the argument that the Debtor held only 'bare' title to proceeds.

Additionally, it is clear from the circumstances and the agreement that the Debtor's possession of the proceeds did not constitute 'management by a financial intermediary.' Indiana courts have stressed that security agreements and "mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties [and] special circumstances." Paul v. Home Bank SB, 953 N.E.2d 497, 504 (Ind. App. Ct. Aug. 8, 2011) (internal citations omitted). "Special circumstances exist when one party has confidence in the other party and is in a position of inequality, dependence, weakness, or lack of knowledge." Id. 953 N.E.2d at 504-05 (internal citations omitted). Moreover, "it must be shown that the dominant party improperly influenced the weaker party to gain an 'unconscionable advantage.'" Id. 953 N.E.2d at 505 (internal citations omitted). While the Debtor, as a car dealer, might have been in a higher position of knowledge and confidence with respect to the original vehicles, DSC does not claim that the original vehicles were held in trust; it only claims that the proceeds were held in trust. But it is absurd to think that a sophisticated financing company would need to rely on a simple car dealer as a depositary to hold cash. DSC argues that it 'lacked knowledge' because the cars and the proceeds of the cars were in the possession of the Debtor, and that only the Debtor knew when the cars were sold. But, the same is true for nearly every secured creditor and every debtor other than secured creditors who maintain possession of collateral. That fact is not enough to transform a debtor-creditor relationship into a fiduciary relationship.

DSC relies on a 4th Circuit Court of Appeals case, In re Strack, 524 F.3d 493 (4th Cir. 2008) for the proposition that "trust-like language" inserted into a security agreement for a floorplan financing arrangement can create a fiduciary duty by a debtor to hold proceeds of financed vehicles in trust for the creditor for purposes of Section 523(a)(4). However, for the reasons stated above, I respectfully disagree with the reasoning in Strack, which is not binding in this circuit, as inconsistent with the reasoning and holdings of the Seventh Circuit Court of Appeals and of the Supreme Court in Davis v. Aetna, 293 U.S. 328 (1934). I believe that the court in Strack gave short shrift to the concept that "fiduciary capacity" under Section 523(a)(4) is a matter of federal law. Instead, the court noted that the parties had agreed that "an express trust can give rise to the requisite fiduciary duty" and that "in determining whether such a trust was established, we look to the law of the Commonwealth of Virginia, where the trust was allegedly created, for guidance." Id. 524 F.3d at 498. In other words, the court essentially looked only at whether the agreement would constitute an "express trust" under state law. The Seventh Circuit Court of Appeals, in contrast, has made clear that, while state law is relevant for

purposes of creating the relationship, the mere fact that state law calls it a "trust" or a "fiduciary" relationship does not make it so for purposes of Section 523(a)(4).

Moreover, the facts here are distinguishable from those in Strack, both because of the language used in the agreement and because the purported trust relationship is created under Indiana rather than Virginia law. The court in Strack focused on the fact that the language in the agreement stated that the debtor "shall segregate the proceeds and hold the same in trust for" the creditor, and that the debtor was entitled to use or transfer the proceeds "free of trust" only when the creditor was repaid to its "satisfaction." 524 F.3d at 499. The court therefore focused on the express "segregation" language to distinguish other cases and to find a trust under Virginia law. However, the agreement at issue here had no such segregation language. As noted above, the agreement did not require the Debtor to turn over the actual proceeds obtained, but rather required him to pay the obligations under the note within 48 hours of sale of collateral. Nor did the agreement expressly require him to hold cash proceeds in a separate account or otherwise segregate the funds. Thus, even if the reasoning in Strack was correct, the language in the agreement at issue here was insufficient to create a fiduciary relationship for purposes of Section 523(a)(4).

Additionally, the court in Strack relied heavily on Virginia law, while the contract at issue in this case was governed by Indiana law. Indiana has codified its trust law in the Indiana Trust Code, Ind. Code 30-4-1 et seq., but under Section 30-4-1(c) of that code, the "rules of law contained in this article do not apply to ... security instruments and creditor arrangements." The document at issue here is a security instrument, and the provision in the contract was clearly intended to protect the security interest of DSC in the collateral and proceeds of that collateral that secured its loan to the Debtor and is therefore clearly part of a "creditor arrangement." Therefore, despite the use of the phrase "hold in trust" in the security agreement, it is governed only by the Uniform Commercial Code, not the Trust Code. While the Uniform Commercial Code creates certain rights and obligations, it does not create a fiduciary relationship. The only Indiana cases that DSC has cited which found the creation of a trust relationship in the context of a mortgage or security agreement were from nearly one hundred years before the Trust Code was enacted and are factually inapposite. Both Premier Steel Co. v. Yandes, 38 N.E. 849 (Ind. 1894), and Jones v. Henderson, 49 N.E. 443 (Ind. 1898), found a mortgage document created a trust relation, but in both cases the trustee was a third party, not the debtor, and was separately compensated to act as a trustee. Those cases dealt with a third party trustee who acted on behalf of bondholders for multiple bonds issued by a corporate debtor. More recent cases have implied in dicta that a mortgage might be able to create a trust relationship with sufficient intent, but always found that a trust relationship had not been created by the mortgage at issue. See, e.g., Huntington Mortg. Co. v. DeBorta, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) ("Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so.") (emphasis added). Moreover, the issue in these later cases is normally whether the secured creditor owed a fiduciary duty to the debtor, not the debtor to the creditor. As one Indiana court has stated, "on a public policy note, we hesitate to set any precedent that would place financial institutions in a guardianship-like position as to parties with which they contract to provide loans." Bruno v. Wells Fargo Bank, N.A., 850 N.E.2d 940, 947 (Ind. App. Ct. 2006). I believe the exclusion of security instruments and creditor arrangements from the application of the Indiana Trust Code demonstrates a similar public policy to avoid placing a heightened fiduciary duty on debtors.

Finally, DSC also argues that the sale of vehicles 'out of trust' constituted "embezzlement" under Section 523(a)(4). However, embezzlement requires the misappropriation of property of another. As stated in Calumet v. Whiters (In re Whiters), "[s]ince a debtor who has granted a security interest in property is still the owner of that property, a lender who advances a loan for the purposes of its debtor's acquiring an interest in a motor vehicle and as part of that transaction acquires a security interest in the vehicle itself, does not have any ownership interest in the vehicle which will sustain either an action for larceny or an action for embezzlement. The same is true if the vehicle is sold and the debtor acquires the proceeds of that sale, impressed as they are with the security interest of the lender." 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006).

### Conclusion

For the foregoing reasons, DSC's motion for partial summary judgment is DENIED. The Court will enter judgment in favor of the Debtor solely on the Section 523(a)(4) portion of DSC's counter-claim, finding that DSC has failed to state a claim under that section.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

October 31, 2011

Judge Manuel Barbosa